42  407
49a  45
51a 658
‾‾‾‾‾‾‾
42  407
175 257

# THE ILLINOIS CENTRAL RAILROAD COMPANY

## *v.*

# URIAL MILLS.

1. RAILROAD — *possession of, evidence of ownership.* When the evidence shows that a railway company have used and operated a road for years, it will be presumed that the company is the owner, and will sustain the averment of ownership contained in the declaration. A company, when exercising the rights and franchises of such a corporation, must be presumed to be the owners, unless it be in a direct proceeding.

2. SAME — *negligence — escape of fire.* When it appears that fire has escaped from a railroad locomotive, it will be presumed that the company were not employing the best known contrivances to retain the fire, and it will, to rebut the presumption, devolve upon the company to show that such machinery was thus employed and in repair. It is presumed to have been the design of the general assembly that railroad companies should use all reasonable precautions to prevent the escape of fire, and they will be held to the discharge of that duty.

3. SAME — *condition of right of way.* It is not a conclusion of law that a railway company is guilty of negligence by permitting grass and weeds to remain on their right of way, and become dry and combustible, which ignite and communicate to adjoining lands. It is a question of fact to be deter-

mined by the jury, in view of the extent to which weeds and grass have been allowed to accumulate in the particular locality, the season of the year, and all other circumstances affecting the liability of fire to communicate. The company are required to use the same diligence in removing dry grass and weeds and other combustible materials from exposure to ignition by the locomotive, that a cautious, prudent man would use in reference to combustible materials on his own farm, if exposed to the same hazard from such material.

4. SAME — *liability*. Although it may appear that fire has escaped from the locomotive of a railroad company by which the property of a plaintiff is burnt, still that is not conclusive evidence of liability of the company. Such bodies are not insurers against the escape of fire from their engines. To so hold would leave them liable, although the utmost diligence might be employed. Such a rule has not obtained.

5. RAILROADS—*degree of care required of them, as compared with individuals*. The care and diligence required in every case should have some relation or affinity to the nature of the business and of the instrumentalities by which it is conducted. So a much higher degree of care should be required of an association owning and controlling such dangerous machines as railroad locomotives, than is usually exercised by a prudent man about his own property. BREESE, J.

6. Railroad companies should not only make their engines as safe as possible, by using the most approved appliances to prevent the scattering of fire, but they should remove all combustible material and keep it from their roadway ; these being done, they should be exonerated from liability, should accidents happen, unless actual negligence be proved against them. Ibid.

WRIT OF ERROR to the Circuit Court of the county of Marion ; the Hon. SILAS L. BRYAN, Judge, presiding.

This was an action of trespass on the case, brought by Urial Mills, in the Marion Circuit Court, against the Illinois Central Railway Company. The first count of the declaration averred that the company owned a railroad, and a right of way one hundred feet wide adjoining a meadow in which plaintiff had a large quantity of hay. That the company suffered their right of way to be covered with dry grass and weeds ; and in operating their road with an engine and train of cars, through their negligence, carelessness, and want of proper care, fire was suffered to escape from the engine to the grass, weeds and other combustible material, and thence to plaintiff's hay, which was thus destroyed.

The second count was substantially the same, except it averred that it was the duty of the company to keep their right of way clear and free from dry grass, weeds, and other combustible material, but that they had failed to perform that duty.

The third count avers that it was the duty of the company to so operate their engines as to prevent the escape of fire to the injury of other persons ; and, if it should escape, that it was the duty of the company to extinguish the same. But that they permitted fire to escape, and failed to extinguish it, whereby plaintiff's hay was burned.

Defendant filed a plea of not guilty. And a trial was subsequently had by a jury, who found a verdict for the plaintiff for $150 damages. Defendant entered a motion for a new trial, which was overruled by the court, and judgment was rendered on the verdict. To reverse which, defendant prosecutes this writ of error.

Messrs. GREEN & STOKER, for the plaintiffs in error.

Mr. M. SCHAFFER, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court :

The first error assigned is not well taken. It asks a reversal for want of proof that plaintiffs in error were the owners of the road. It was proved that they had used and operated the road for a number of years ; and the possession of property is *prima facie* evidence of ownership. It is true, that mere possession is not a high grade of evidence, but, until rebutted, it is proof of ownership. In this case, when the company were found to be using the road, and had been for years, and had been and still were exercising the rights and franchises of a corporation, it may be doubted whether they could be heard to deny that they were the owners. They, however, made no effort to disprove their ownership.

The second assignment of error questions the correctness of the second instruction given for defendant in error. That instruction asserts that the escape of fire from a railroad engine

raises a presumption of negligence on the part of the road, and, that fire having been shown to have thus escaped, the onus then devolved upon defendants to rebut the presumption of negligence, by proving that they had the engine, from which the fire escaped, equipped with the most improved mechanical contrivances employed to prevent the escape of fire. Observation and experience teach, that engines, unprovided with such contrivances, are liable, in a high degree, to communicate fire to adjoining property.

And when the legislature chartered these companies, they knew that they were licensing them to employ a highly dangerous element in the exercise of their franchises and chartered privileges. Yet, dangerous as it is and was known to be, it is indispensable to the exercise of their privileges and the enjoyment of their franchises. And the legislature having omitted to make any provision on the subject, it must be presumed that they designed these bodies should employ all reasonable precautions to prevent injury to the public or to individuals, in the use of fire to propel their trains. And experience proves, that, by the use of modern inventions for the purpose, the escape of fire may ordinarily be prevented. And when it does escape we may safely infer that such machinery has been omitted, and require the company to show that it was employed and in proper condition.

In this there is no hardship, as the engine is under the control of the employees of the road, and they know, or at least are bound to know, that the engine is properly equipped to prevent fire from escaping. They know whether any machanical contrivances were employed, and, if so, their character. On the other hand, persons not connected with the road have no such means of information. Trains passing at a high rate of speed are not accessible to examination by persons not connected with the train, and who are thereby denied all means of ascertaining whether the necessary equipments are employed by the company. Hence, the necessity of requiring the company to show their use at the time, to rebut the presumption of negligence.

It is insisted that the third instruction given for defendant in error is not the law. It asserts that it is negligence for a railroad company to permit weeds and grass to remain on their right of way, after they have become dry and combustible; and the escape of fire from their engines, and communicating with such weeds and grass, is negligence, for the results of which the company are liable.

It is not an indisputable conclusion of law, that a railway company is guilty of negligence, to be inferred from the fact that fire ignites in dry weeds or grass on the land of the railway. It is a question of fact to be determined by the jury in view of the extent to which dead grass and weeds have been allowed to accumulate in the locality, the season of the year and all other circumstances affecting liability to fire. The court, instead of directing, as a matter of law, that the presence of dry grass or weeds was conclusive evidence of negligence, should have told the jury that the company were bound to use the same diligence in removing dry weeds and grass, and all other combustible materials, from exposure to ignition by the locomotive, that a cautious and prudent man would use in referrence to combustible materials upon his own premises, if exposed to the same hazard from fire as dry grass upon the side of a railway. This instruction went beyond this, and for that reason it was erroneous.

The jury returned into court after they had retired to consider of their verdict, and asked further instructions. The court thereupon gave this: "That if you believe from the proof in the case, that the fire from the locomotive of the defendants set the fire out, by which the plaintiff's hay was burnt, that is sufficient proof on this point to make the defendants liable." There is no error in giving proper instructions after the jury have retired, when they shall request it. It may be discretionary, but it cannot be erroneous, for the court to give the jury proper instructions as to the law applicable to the case, when asked to do so by the jury.

This instruction, however, was manifestly wrong, and should not therefore have been given. If the rule it announces was

correct, a railroad company would be insurers against fire escaping from their engines, no matter how high a degree of diligence they may have employed, or in what manner the fire may have escaped. Under such a rule, no degree of diligence, even the utmost of which human capacity is capable, would relieve them, if it were but shown that the fire escaped from an engine of the company. Such a rule cannot be found to have ever been announced by the courts of this country or in Great Britain; and the instruction is manifestly erroneous.

No objection is perceived to the third instruction given for defendants below. As modified, we are of the opinion that it fairly presents the law applicable to the case. In discussing plaintiff's third instruction, and that given at the request of the jury, we have disposed of the sixth assignment of errors.

The judgment of the court below must be reversed and the cause remanded.

Separate opinion by Mr. JUSTICE BREESE:

It is true, a railroad company has a chartered right to use their road for their profit, but it must be in obedience to the maxim of universal application: "*Sic utere tuo ut non alienum lædas.*"

I cannot believe there is the slightest analogy between individual action and conduct, and that of an association running and controlling such dangerous machines as railroad locomotives. Nor can I think the care and diligence a prudent man would use about his own property is of the same grade as that required of railroad companies. For the safety of the people and their property, a degree much higher ought to be required. The care and diligence required in every case, should have some relation or affinity to the nature of the business, and of the instrumentalities by which it is conducted. The opinion of the majority of the court shows this. An individual proprietor is not required to place spark arresters or other contrivances over his chimney-tops, but railroad proprietors are. They must make their engines as safe as possible by the use of proper appliances.

My opinion goes still further, as expressed in the case of *Bass* v. *The Chicago, Burl. & Qu. R. R. Co.* 28 Ill. 9.

In addition to these approved mechanical contrivances, they should be required to keep their roadway, on both sides, free from inflammable material, which can be effectually and cheaply done, and which, being done, should exonerate them from liability unless actual negligence be proved against them. While any reasonable act remains to be done by them, and which contributes to the injury complained of, or was the proximate or remote cause of the injury, they ought not to be exonerated.

Having removed all combustible material, and keeping it from their roadway, and using the most approved contrivances to prevent the scattering of fire, reason and justice would concur in holding them guiltless should accidents happen. Omitting these, they should, in my judgment, be held guilty of negligence in every case like the one now decided.

*Judgment reversed.*